192 P.3d 21 (2008)
Sue HONG, dba Heritage House II, Respondent,
v.
WASHINGTON STATE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, Appellant.
No. 59549-1-I.
Court of Appeals of Washington, Division 1.
September 15, 2008.
*22 Samuel Sangki Chung, Lee Anav Chung LLP, Seattle, WA, for Respondent.
*23 Daphne Jiling Huang, Atty. Gen. Office, Seattle, WA, for Appellant.
BECKER, J.
¶ 1 The Department of Social and Health Services revoked Sue Hong's license to operate an adult residential facility. Administrative hearings affirmed the revocation. Hong appealed to superior court, contending that the administrative law judge arbitrarily limited her cross-examination of a key witness. The superior court agreed and remanded for further proceedings. On remand, the department did not produce the witness but nevertheless decided again to revoke Hong's license. The same superior court judge held a second hearing, and this time reversed the revocation of Hong's license.
¶ 2 The department contends that the superior court lacked jurisdiction at the second hearing because Hong did not file a new petition for review after the remand hearing. We reject this argument. Where an agency has improperly excluded evidence from the record, the Administrative Procedure Act authorizes the court to remand for further proceedings before the court makes a final decision.
¶ 3 On the merits, the superior court erred by concluding that the department's failure to produce the witness for further cross-examination at the remand hearing required reversal of the department's action. We reverse the superior court and reinstate the department's decision to revoke Hong's license.

FACTS
¶ 4 Hong was licensed to operate two adult family homes known as Heritage House I and II. This appeal concerns her license to operate Heritage House II. The revocation decision was based on seven violations found during an unannounced investigation by the department in July 2003.
¶ 5 There were five residents of Heritage House II. Four were elderly women, one with dementia. The fifth was WH, a 71-year-old man who, in contrast to three of the women, needed relatively little assistance with daily living. Otilia Castro was one of two regular caregivers. Hong herself lived at Heritage House I, not far away.
¶ 6 A key witness at the revocation hearing was Isel Solis. It was Solis who triggered the investigation by calling the department's hotline on July 14, 2003. Solis was Castro's cousin. Without Hong's permission, Castro asked Solis to fill in for her by working at Heritage House II on July 7 and July 14. Solis testified that while she was working on July 14, she had to deal with several problems caused by WH. He hit one of the other residents on the head and became angry when chastised. At lunch, he poked his cane at the legs of the other residents while they were eating, and she later saw him touching the genital area of one of the other residents. Solis testified that she did not know how to contact Hong about WH's behavior, so she called the department's hotline and left a voice message reporting that there was an aggressive male resident who was being abusive.
¶ 7 An investigator arrived at Heritage House II later that day. She talked to Solis and WH in person and spoke to Hong by telephone. The investigator returned to the home two days later and interviewed Hong in person. The investigator's written report detailed seven deficiencies at the home. The primary allegation was that Hong had not formulated a plan to protect the four female residents, despite having received information about WH's abusive behavior. Many of the other violations stemmed from the undisputed fact that Solis was not supposed to be giving care at the home and had not been properly trained or oriented to the home. The investigator found that Solis did not know how to contact Hong in an emergency situation. Also, Castro had poured out the medications for the residents before she left, initialed the medication log, and instructed Solis to dispense the medications at 8 a.m. This violated regulations because Solis was not a person authorized to give medications; she was not aware of what medications she was dispensing; she did not know where the medications were kept; and the person who dispensed the medications was not the person who initialed the log. Another violation *24 was that Solis did not know where to find the individual care plans for each resident.
¶ 8 On July 16, 2003, the department notified Hong of a summary suspension, license revocation, and an order to stop admissions at Heritage House II. The notice referred to the violations as serious deficiencies determined to be an imminent danger to the health, safety or welfare of the residents. The administrative hearing was held to review Hong's appeal from this notice.
¶ 9 At the administrative hearing, there was some evidence that did not reflect particularly well upon the department. After Hong spoke with the investigator on the telephone on July 14, she called Truang Tang, the department's case manager for WH. She wanted to tell him about the allegations and if necessary move WH to another home, which would require Tang's approval. Tang did not answer. Hong called again the next morning and left a specific message that there were problems with WH. Tang did not call back. Hong reached Tang on the morning of July 16 but Tang said he was busy and would have to call her back. He did not call back. The investigating staff talked to Tang and he told them he had no information about any plan for WH. His response formed part of the basis for the department's determination that Hong had not taken any action to protect the female residents from WH. At the hearing, Tang testified that he got a lot of telephone calls and did not believe Hong's call was urgent.
¶ 10 The department did not disclose in discovery the one-page intake form generated by department staff from the voice message Solis left on the hotline on July 14. Hong did not see a copy of the form until after Solis testified. The form identified Heritage House II as the facility and Solis as the complainant. The form stated a contact telephone number for Solis that was nonworking, although except for one digit it was the telephone number for Heritage House I. In the spaces for "alleged victim" and "alleged perpetrator", the form listed one of the female residents and WH respectively, and then stated social security numbers for each of them that were, improbably, in exact numerical sequence. The form stated that the call by Solis had come in at 10:34 a.m.
¶ 11 Hong moved to reopen the record to allow her to question Solis about the form, with the aim of showing inconsistencies between the form and Solis's testimony. For example, Solis testified that she observed WH misbehaving at lunch, whereas the form indicated that she called in the morning. Also, Hong argued that it was so unlikely that the true social security numbers would be in exact sequence that Solis must have made them up when she provided the information. And Hong believed that Solis must have intentionally given a non-working contact telephone number. The administrative law judge denied Hong's motion to reopen the record.
¶ 12 The administrative law judge affirmed the revocation. Hong appealed unsuccessfully to the department's Board of Appeals. She then filed a petition for judicial review. She alleged the department was arbitrary in denying her motion to reopen the record.
¶ 13 The petition for judicial review was heard by the King County Superior Court, the Honorable Brian Gain presiding. The court found that the administrative law judge was arbitrary in refusing to allow Hong to cross-examine Solis about the intake form, because the revocation decision was based in large part on Solis' testimony and Hong was entitled to attack her credibility. The transcript of the oral ruling shows that the court was also troubled by the evidence that Tang ignored Hong's telephone calls. But the court declined to reverse the revocation outright. Instead, the court remanded to the Office of Administrative Hearings for further proceedings to address the credibility of Solis.
¶ 14 Counsel for the department sought specific guidance about how the remand hearing should be conducted. After much discussion, the court entered a written order stating that any "dispute between the parties about how the matter shall proceed upon remand ... shall be resolved by the assigned ALJ." Judge Gain stated, "If the ALJ rules that, no, it's only cross-examination on this document, then you will probably be back up here with some other judge. The judge will *25 probably have to decide whether or not that was adequate."
¶ 15 The department mailed Solis a subpoena for the remand hearing, but she did not appear. The department represented that Solis could not be located for service of a subpoena. The administrative law judge allowed the department to call other witnesses relating to the credibility of Solis with respect to the telephone number and social security numbers. At the hearing, a department employee described the process of preparing an intake form from a hot line message. Where the form has blanks for social security numbers, the computer generates fictional sequential numbers in the interest of protecting confidential information. The numbers are not provided by the caller and do not actually identify the residents involved. The investigator who cited Hong for the violations testified that the intake form merely instigates the investigation. She said she did not rely on any substantive information provided on the intake form when investigating the complaint at Heritage House II.
¶ 16 The administrative law judge determined that the witnesses had adequately addressed the superior court's concerns regarding the intake form, and affirmed the revocation. Hong appealed to the department's Board of Appeals. The review judge issued a 55-page review decision and final order again affirming the revocation of Hong's license.
¶ 17 Hong noted a motion for a hearing under the superior court cause number of her original petition for review. The second hearing was also held before Judge Gain. The department requested dismissal of Hong's motion on the theory that Judge Gain had not explicitly pronounced his intention to retain jurisdiction when he remanded the case after the first hearing, and therefore the remand order was a final order. According to the department, to obtain review Hong would have had to file a new petition for judicial review with a new cause number. The department also requested that Judge Gain recuse himself.
¶ 18 Judge Gain rejected these requests and considered Hong's motion. He maintained the view that it was arbitrary to revoke Hong's license without providing the opportunity to cross-examine Solis about the intake form:
If the ALJ still has not provided the opportunity to cross-examine that witness that is the sole witness supporting the action against the licensee, it is arbitrary and capricious, and it should be reversed.
.... And to not subpoena the witness and to decide, well, there's other explanations without allowing cross examination is a denial of due process.[1]
¶ 19 The administrative record of the remand hearing had not yet been supplied to the court when the hearing was held on Hong's renewed motion for review. The department asked the court to review the record before making a final ruling, to no avail. "I don't need to review the record again to decide that you haven't done what I indicated needed to be done to correct the deficiencies."[2] The court ruled that the department's failure to make Solis available at the remand hearing was a fatal flaw. The court entered a written order reversing the administrative decision:
On July 12, 2005, this Court had issued an oral ruling that the decision of the ALJ and the Reviewing ALJ was arbitrary and capricious and that upon remand Isel Solis must be made available for cross examination by Petitioner.
....
This Court finds that it was arbitrary and capricious for the remanded hearing judge and the reviewing judge to find Isel Solis credible without her testimony at the remanded hearing. It was arbitrary and capricious to find her credible without affording Petitioner her right to cross examine Isel Solis as previously ordered by this Court. The Department submitted a document after the initial hearing concluded. Cross examination of Isel Solis regarding this document was necessary to determine her credibility with respect to her testimony given at the hearing. The Court did *26 not review the administrative record from the remanded proceedings.... This Court is satisfied that because cross examination of Isel Solis did not occur, the Department's actions must be reversed.[3]
¶ 20 The department appeals.

JURISDICTION
¶ 21 The department argues that the superior court lacked jurisdiction to review the ALJ's decision after the remand. The department contends that in order to obtain further judicial review after the remand, Hong had to pay a second filing fee and file a new petition with a new cause number.
¶ 22 The department primarily relies on Pierce County Sheriff v. Civil Serv. Comm'n., 98 Wash.2d 690, 695, 658 P.2d 648 (1983). In that case, a county sheriff sergeant who was terminated by the sheriff for misconduct appealed to the Pierce County Civil Service Commission. The commission reinstated him. The sheriff brought a petition for judicial review. The superior court reversed the commission's decision on the ground that the commission had applied the wrong burden of proof standard. On remand, the commission adhered to its original decision. The sheriff again sought judicial review. The court allowed the sheriff simply to amend his original motion for writ of review rather than requiring him to bring a new petition. The court again found fault with the commission's decision and remanded for imposition of discipline.
¶ 23 The sergeant appealed to the Supreme Court, and among other things alleged it was error for the superior court to allow the sheriff to amend his original petition rather than initiating a second proceeding. The Supreme Court agreed, stating that the superior court lost jurisdiction when it remanded the case:
In the instant case, the court had already decided the issues presented by the Sheriff's writ of review and remanded to the Commission. Just as an appellate court loses jurisdiction upon remand to the trial court (Reeploeg v. Jensen, 81 Wash.2d 541, 546, 503 P.2d 99 (1972)), ... a superior court reviewing action of an administrative agency loses jurisdiction upon remand to the agency. Permitting amendment in the present case was therefore error.
Pierce County Sheriff, 98 Wash.2d at 695, 658 P.2d 648.
¶ 24 Despite holding that it was a jurisdictional error to permit the sheriff to amend his original petition, the court found the error to be harmless. "Nonetheless, dismissal of the Sheriff's appeal is not the proper remedy here. In light of the fact that the central purpose of our pleading rules is to provide adequate notice ... error such as that made here justifies reversal only upon a showing of prejudice." Pierce County Sheriff, 98 Wash.2d at 695, 658 P.2d 648.
¶ 25 Requiring a showing of prejudice in order to dismiss indicates an inconsistency in the court's analysis. When a court lacks jurisdiction, any decision rendered is void; dismissal is the only permissible action the court may take. See Young v. Clark, 149 Wash.2d 130, 133, 65 P.3d 1192 (2003). In the case cited by the Supreme Court, Reeploeg v. Jensen, 81 Wash.2d 541, 549, 503 P.2d 99 (1972), the Court of Appeals dismissed an appeal, remitted the case to superior court, and denied a motion to recall the remittitur. Two months later, the court granted a second motion to recall the remittitur. The Supreme Court concluded that the order granting the motion to recall the remittitur was void. Once the first petition to recall was denied, "the issue was laid to rest, the order of dismissal became final, and the Court of Appeals was without jurisdiction to again consider the propriety of its issuance." Reeploeg, 81 Wash.2d at 549, 503 P.2d 99. In other words, an appellate court loses jurisdiction when it has made a final order and control of the case has passed out of its hands. If the superior court in Pierce County Sheriff made a final order disposing of the sheriff's initial petition for review, control over the case passed out of its hands and the only power it had with respect to the sheriff's second motion was the power to dismiss. Any other order it rendered in the case *27 would have been void and not subject to a harmless error analysis.
¶ 26 Notwithstanding the inconsistency in the analysis and disposition of Pierce County Sheriff, the case does illustrate the general principle that a court's jurisdiction over a case is not unending. The interest in finality requires that there be a determinable point in time at which litigation ceases. To require courts to consider and reconsider cases at the will of litigants would deprive the courts of that stability which is necessary in the administration of justice. Kosten v. Fleming, 17 Wash.2d 500, 505, 136 P.2d 449 (1943). However, Pierce County Sheriff cannot be read to say that a court automatically loses jurisdiction over a case when it remands for further proceedings. In Pierce County Sheriff, the court lost jurisdiction only because it "had already decided the issues presented by the sheriff's writ of review" when it remanded to the commission. Had the first order been interlocutory rather than final, the court would not have lost jurisdiction.
¶ 27 In Pierce County Sheriff, there was no specific statute authorizing the sheriff's appeal, and so he was allowed to invoke the inherent power of the courts "to review agency action to the extent of assuring that it is not arbitrary and capricious." Pierce County Sheriff, 98 Wash.2d at 694, 658 P.2d 648. But generally the superior court's jurisdiction in an appeal from an administrative agency is limited to that set out in the applicable statutes. Skagit Surveyors & Engineers LLC v. Friends of Skagit County, 135 Wash.2d 542, 555, 958 P.2d 962 (1998). In the present case, the department's challenge to the superior court's jurisdiction must be evaluated in light of the Administrative Procedure Act, chapter 34.05 RCW, which establishes "the exclusive means of judicial review of agency action" in cases such as Hong's. RCW 34.05.510. An order remanding a case to an agency for further proceedings may be a final order under the Act. RCW 34.04.574(1). But the Act also provides that the court "may remand a matter to the agency, before final disposition of a petition for review, with directions that the agency conduct fact-finding and other proceedings the court considers necessary," if the agency "improperly excluded or omitted evidence from the record." RCW 34.05.562(2), (2)(c) (emphasis added).
¶ 28 The court's remand order fits squarely within the interlocutory remand procedure authorized in RCW 34.05.562(2). The court found that remand was necessary "as there is insufficient evidence or testimony admitted into the administrative record, to address the credibility of witness Isel Solis with respect to the false or improbable information on the complaint intake form."[4] The department argues that Judge Gain orally yielded jurisdiction when he commented that after the remand, "you will probably be back up here with some other judge." But this statement is not inconsistent with the court retaining jurisdiction. Jurisdiction is exercised by a court; it is not personal to a particular judge. And contrary to the department's argument, a superior court does not have to make an explicit statement of intention to retain jurisdiction in order to avoid losing jurisdiction upon remanding. The question is whether the remand order is a final order. Here, the written order by its own terms shows that the court was not yet making a final disposition of Hong's petition for review.
¶ 29 Unlike the superior court in Pierce County Sheriff, the court's initial decision did not decide all the issues presented in the petition for review. Judge Gain had decided it was arbitrary to withhold the intake form and deny Hong the right to inquire about it, but he had not finally decided that Hong was entitled to reversal of the revocation order. We conclude the superior court did not lose jurisdiction by remanding, and accordingly did not err in allowing Hong to return for further review in the same case without filing a new petition.

REVIEW ON THE MERITS
¶ 30 The department contends that even if the superior court had jurisdiction, it erred on the merits when it reversed the administrative *28 order revoking Hong's license. We agree.
¶ 31 Judicial review of a final administrative decision is governed by the Washington Administrative Procedure Act. Tapper v. Employment Security Dept., 122 Wash.2d 397, 402, 858 P.2d 494 (1993). A reviewing court may reverse an administrative decision when the decision is not based on substantial evidence or is arbitrary and capricious. RCW 34.05.570(3). In reviewing the administrative action, this court sits in the same position as the superior court and reviews the record before the agency. Tapper, 122 Wash.2d at 402, 858 P.2d 494.
¶ 32 Hong contends the superior court should be affirmed because the department defied the order to make Solis available to be examined about the intake form. But the initial remand order from the superior court did not state that further testimony from Solis was indispensable to justify the revocation. It stated that any dispute about how to proceed was to be resolved by the administrative law judge. The witnesses called by the department at the remand proceeding directly addressed the court's concerns about Solis's credibility by explaining that Solis did not supply the social security numbers or the intake form. The review judge found that Solis did provide the contact telephone number, but could not find that she intentionally gave a non-working number to conceal herself because she did correctly identify the facility and cooperated with the investigation. As to the discrepancy between the reported time of Solis's call (10:34 a.m.) and her testimony that some of WH's misconduct occurred at lunchtime, the review judge pointed out that Hong was aware of this discrepancy before obtaining the intake form and could have cross-examined her about it at the first hearing. After thoroughly considering Hong's arguments about other alleged inconsistencies in the testimony and Solis's possible motives to lie, the department concluded that there was no reason to regard the testimony of Solis as lacking in credibility.
¶ 33 While Hong has vigorously argued her case at all levels and has brought out mitigating facts tending to support the view that she was adequately caring for her residents, we nevertheless conclude that the department met its burden of proof and there is substantial evidence supporting the license revocation decision. The primary violation was Hong's failure to take action to protect the other residents once she had information that WH was abusing them. Hong testified that Castro told her of inappropriate touching by WH on July 7, 2003. Hong said she did not inform WH's wife or his case manager because she thought Castro did not like WH and was exaggerating. Hong knew from WH's records that he had been diagnosed with "intermittent explosive disorder", but she did not inquire to find out what this meant. After she learned of the incident reported on July 14, 2003, Hong tried to arrange a meeting about moving WH to a different facility, but she did not set up a plan to monitor WH's behavior in the interim. The department could reasonably conclude that Hong did not act decisively enough to ensure that the female residents were safe while WH remained at Heritage House II. Furthermore, it was undisputed that the residents had been left in the care of an untrained person who did not understand the medications and was not oriented to the facility.
¶ 34 The essence of Hong's argument is that others were at fault for the unsafe situation. While Castro can be faulted for allowing her untrained cousin to work without Hong's approval, the fact remains that Hong was not sufficiently aware of the situation at Heritage House II to realize that Solis was substituting for Castro. And while Tang, WH's case manager, can be faulted for ignoring Hong's requests for help, it was Hong who had responsibility for the immediate situation. As the review judge explained, if Heritage House II did not provide a safe environment for whatever reason, "then the Department cannot allow that facility to continue to provide care for these vulnerable adults."[5]
*29 ¶ 35 We conclude it was not arbitrary for the department to rely on testimony by Solis. Her testimony, along with the rest of the evidence, adequately supports the decision to revoke Hong's license. We reverse the superior court's decision and reinstate the decision of the department.
WE CONCUR: DWYER, A.C.J. and SCHINDLER, C.J.
NOTES
[1] Report of Proceedings (Dec. 15, 2006) at 8, 9.
[2] Report of Proceedings (Dec. 15, 2006) at 11.
[3] Clerk's Papers at 286-87.
[4] Clerk's Papers
[5] Clerk's Papers at 237.