IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MEDICAL LAKE CEMETERY, ASSOCIATION, a Washington non-profit Corporation, | ) ) ) ) | No. 38850-6-III |
| Respondent, | ) ) | |
| DAVE AND JULIE TUELLER, husband and wife, WILLIAM A. YATES, an individual, JAMES JOHNSON, an individual, RENEE JOHNSON, an individual, ANNA M. OLSON, an individual, CAROL L. WHITEHEAD, an individual, ROBERT J. WHITEHEAD, an individual, PATRICIA A. APREGAN, an individual, DONNA WHITEHEAD, an individual, SHARON WHITEHEAD, an individual, ANTHONY D. WHITEHEAD, an individual, JOHN E WHITEHEAD, an individual, ANNA JOHNSON, an individual, JOSEPH DAVISON, an individual, JOSEPH R.YOUNG, an individual, PAMELA S. MCCOLLAM, an individual, and TOBY WILLIS, an individual, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | UNPUBLISHED OPINION |
| Petitioners, | ) ) | |
| v. | ) ) | |
| SPOKANE COUNTY, a political subdivision of the State of Washington; | ) ) ) | |
| Respondent, | ) | |

No. 38850-6-III,
*Medical Lake Cemetery Ass'n v. Spokane County*

|                                         |   |
|-----------------------------------------|---|
| SPOKANE GUN CLUB, a Washington non-profit Corporation, | ) ) ) ) |
| Appellant.                              | ) |

FEARING, C.J. — In this Land Use Petition Act (LUPA) case, chapter 36.70C RCW, appellant Spokane Gun Club appeals the Pend Oreille County Superior Court's denial of a conditional use permit to operate a shooting range on the ground that the range would violate the Spokane County Fairchild Air Force Base military airport overlay zone. The superior court raised this issue on its own. A hearing examiner had approved the permit, and an earlier superior court had remanded the case to the hearing examiner to impose conditions on the permit. This appeal requires us to address numerous procedural questions such as whether the superior court permissibly and on its own raised the issue of the overlay zone and whether this court should decide the appeal on the basis of the zone. The appeal also requires us to determine if the shooting range is an inconsistent use for the rural traditional zone, in which it sits, or constitutes a recreational vehicle park because of the presence of recreational vehicle parking. Finally, the appeal demands that we resolve whether a decision by the Lincoln County Superior Court in an earlier LUPA action prevents us from addressing the prohibition against recreational vehicle parks.

We decline to tackle the applicability of the military airport overlay zone. We affirm the superior court's reversal of the issuance of the conditional use permit, however, on the basis that the gun club's operations plan includes the presence of a

2

recreational vehicle park within the meaning of the county zoning code. The code

prohibits a recreational vehicle park within the gun club's zone.

FACTS

Appellant Spokane Gun Club purchased a 451-acre parcel outside the city of

Medical Lake with designs to transform the property into a shooting range. The property

sits adjacent to the Medical Lake Cemetery. The Medical Lake Cemetery was

established in the 1870s and was listed in the Washington State Heritage Register in

2018. Respondent Medical Lake Cemetery Association, a nonprofit organization,

operates the cemetery.

Spokane County's Comprehensive Plan (SCCP) and Spokane County Zoning

Code (SCZC) designates the Spokane Gun Club's 451-acre parcel as lying within the

county's "rural traditional" zone. Rural traditional zoning covers farming, ranching,

large lot residences, and rural oriented recreation. SCZC 14.618.100. The Spokane

County zoning code permits a "gun and archery range" in resource lands zones, including

rural traditional zones, only with a conditional use permit. SCZC 14.616.220, Table 616-

1.

Elsewhere, Spokane County Zoning Code defines a "gun and archery range":

> A facility or area used for archery and/or the *discharging of firearms*
> including rifles, pistols, or shotguns, for *the purpose of target practice*.

SCZC 14.300.100 (emphasis added).  The same code section defines "participant sports

and recreation" for both inside and outside:

> *Participant Sports and Recreation (indoor only)*: Participant sports
> and recreation use in which the sport or recreation is conducted within an
> enclosed structure.  Examples include but are not limited to bowling alleys,
> roller and ice-skating rinks, dance halls, racquetball courts, physical fitness
> centers and gyms, and videogame parlors.
> *Participant Sports and Recreation (outdoor only)*: Participant sports
> and recreation use in which the sport or recreation is conducted outside of
> an enclosed structure.  Examples include tennis courts, water slides, and
> driving ranges.

SCZC 14.300.100.

Spokane County Comprehensive Plan, Chapter 3, RL-1 defines *Rural Land Use,*

*Rural Character* and *Rural Land Use Categories*, as "a traditional development setting

with low population density."  The same plan section limits uses in the Rural Traditional

Zone to "industries directly related to and dependent on natural resources."

The Spokane County Zoning Code precludes a recreational vehicle

park/campground from a rural traditional zone.  SCZC 14.618.220.  The code defines a

"Recreational Vehicle Park/Campground" as

> An area where *facilities* are provided for *camping units* as defined
> herein, utilized by the *public* for camping[,] for recreation on a temporary
> basis and not designed for long term occupancy.  The recreational vehicle
> park/campground *may include* recreational services, *facilities*, and activities
> for utilization by the public that are typical and ordinary to the recreational
> vehicle park/campground industry.

SCZC 14.300.100 (emphasis added). The zoning code does not define the word

"facilities" as found twice in the definition of "recreational vehicle park." A general

provision of the code requires words not defined to be "construed as defined in Webster's

*New Collegiate Dictionary.*" SCZC 14.300.000(2).

The Spokane County Zoning Code defines

"camping units" as:

> A vehicle designed and intended for temporary occupancy by persons engaged in camping or use of a camping unit for recreation. Camping units include but are not limited to *recreational vehicles*, recreational park trailers, travel trailers and campers . . . and other similar shelters.

SCZC 14.300.100 (emphasis added). The Code defines a recreational vehicle:

> Recreational Vehicle (RV): A vehicular type portable structure without permanent foundation primarily designed as temporary living quarters for recreational, camping, or travel use, with or without motor power, and occupied in any one place for a period not exceeding 30 days. This includes, but is not limited to, travel trailers, truck campers, camping trailers, and self-propelled motor homes.

SCZC 14.300.100.

Spokane County Zoning Code 14.612.240(5) lists numerous requirements to

operate a recreational vehicle park. The list mentions accessory uses permitted in a park.

The accessory uses include:

> management headquarters, recreational facilities, restrooms, dumping stations, shower, laundry facilities, and other uses and structures customarily incidental to operation of a recreational vehicle park.

5

Spokane Gun Club's proposed shooting range would sit near Fairchild Air Force Base (Fairchild). As a result, the club's proposed range lies inside the Spokane County Zoning Code's Fairchild Air Force Base Overlay Zone (military airport overlay zone or overlay zone). SCZC 14.702A.100. The zoning code prohibits incompatible uses to the overlay zone. One code section prohibits uses catalogued as "high intensity uses" if the use encourages concentrations of people exceeding 180 persons per net acre. SCZC 14.702A.430(3). This list includes "spectator sports." SCZC 14.702A.430(3). SCZC 14.702A.430(3) further precludes other uses regardless of the number of persons attracted:

> *Notwithstanding any other provision in this section*, non-aviation related museums, libraries, race tracks, hotels, motels, resorts, group camps, non-aviation related colleges and universities, *participant sports and recreation*, amusement parks, recreational vehicle parks, entertainment uses, cultural facilities, public assembly facilities (concert halls, theaters, stadiums, amphitheaters, arenas, community centers, churches and similar facilities) are not permitted.

SCZC 14.702A.430(3) (emphasis added).

In 2019, the Spokane Gun Club sought a conditional use permit from the Spokane County Planning Department to develop the shooting range within the rural traditional zone. In a July 11, 2019 letter from President John Cushman of the Spokane Gun Club to neighbors of the proposed gun range, Cushman wrote, in part:

> The project scope includes a club house, storage/maintenance facility, trap/skeet stations and related sitework for access, landscaping, utilities, parking and site security. Open site areas will be improved to

6

> provide "*dry camping" for RV's attending Regional and State level
> competitions*. Additional scope may include a fully contained pistol range,
> a sporting clay course, 5-Stand shooting, International Trap and utility
> connections for short-term RV use at periodic events. Inclusion of any part
> of these additional scope elements will be dependent on the design
> response, regulatory approval, and funds available.
>
> *Facilities will be sized to accommodate State and Regional
> competitive events.*

Administrative Record (AR) at 503 (emphasis added).

During a conference with the Spokane County Planning Department, the Spokane

Gun Club disclosed that the public will enjoy access to the gun range. An August 21,

2019 letter from the club to the planning department stated that the new range would

provide sport opportunities not only to club members, but to the public.

In January 2020, the gun club submitted to the county an updated operations plan,

which proposed the following hours of operation:

> The site will be open from 10:00 a.m. to dusk on Wednesday,
> Saturday and Sunday. Days and hours of operation may be restricted or
> expanded depending on expected usage, demand, or multi-day events.
> Maximum operating hours (depending on demand) will be 9:00 a.m. to 7
> p.m., Wednesday through Sunday.

AR at 315-16. The January 2020 operations plan also announced the club's plan to host

regional competitions:

> The Gun Club could potentially host five regional competitions per
> year with participation varying from 50 shooters for day events up to 150
> shooters for multi-day events. Two of the hosted events are multi-day
> events: (i) a three-day State shoot in June with 120 participants that takes
> place from Friday through Sunday; and (ii) the five-day Pacific

International Trapshooting Association (PITA) shoot in August with 150 shooters that takes place from Wednesday through Sunday. . . .

The Club could potentially host, on average, two competitive shoots per month during the months of April through October, with the potential to host additional competitive shoots on available weekends, pending interest.

AR at 316.

The January 20, 2000 operations plan further read, in part:

A. <u>Business Operation</u>. . . .

In addition to shooting venues, the Club will develop a club house that will contain the following elements: meeting rooms, *industrial kitchen and/or food preparation area for feeding visitors at events*, pro shop, bathrooms, storage facilities, and other amenities as necessary to suit the needs of the Club. . . .
. . . .
D. <u>Parking</u>. Paved vehicle parking is located near the South border of the property and is accessible from Thorpe Rd. . . . Reasonable diligence (see attached Site Plan). . . . *The Club also plans to provide approximately 45 parking spaces for self-contained recreational vehicles (without any hookups or connections to services)* for multi-day events. This parking will facilitate out-of-town participants at the Club's multi-day events. *No facilities (water, electricity, sewer, restrooms, showers or other facilities) will be provided for recreational vehicles.* All parking and use of recreational vehicles will be in connection with the use of the Club for shooting activities and will be limited to the time period of a shooting event or competition hosted by the Club. The longest shooting event currently planned by the Club is five or six days, resulting in the maximum recreational vehicle parking permitted for the property to be six or seven nights (plus a reasonable period of time before and after events to facilitate members or invitees who travel significant distances to attend a Club event).
. . . .
F. <u>Security</u>. The Club will *install perimeter fencing* around most of the Club facilities. *Gates will control access* in and out of the facility after normal operating hours. The Club will install *electronic surveillance and*

8

*security alarms* to monitor the facility. *Outdoor lighting* (dark-sky complaint) will be installed to provide additional security.

. . . .

H. <u>Sanity Facilities</u>. All bathrooms and plumbing will be located in the club house. The facility will include a septic tank and drain field, all built to county code.

AR at 315-17.

The planning department prepared a staff report regarding the proposed gun range. In the single paragraph analyzing the gun range's location within the Fairchild Air Force Base airport overlay zone, the report read:

The subject property is located within the Fairchild Air Force Base Overlay (FOZ) zone and within Military Influence Area (MIA) 3/4. Section 14.702A.430. Compatible Uses and Densities prohibits non-residential uses that encourage substantial concentrations of people exceeding 180 persons per acre. The proposed use will not exceed this density limitation. This section goes on to state that participant sports and recreation and public assembly will not be permitted. The Zoning Code specifically defines 'participant sports' and 'gun and archery ranges' as separate uses and Table 618-1, Rural Zones Matrix, lists a gun and archery range, and recreational area, commercial as separate uses, as well. Additionally, the use will not be open to the general public. The application materials were circulated to Fairchild Air Force Base for review and comments were received which limit lighting, use of rifles, shooting direction, and type of ammunition permitted, among other items.

AR at 624.

A representative of Fairchild Air Force Base submitted a letter to the planning department summarizing the conditions it would require on Spokane Gun Club's shooting range. The letter declared that the gun range must incorporate safety features to ensure a lack of danger to the base or to low flying aircraft. Such features included no

rifles, a fully baffled pistol range, a shotgun range designed and located so that a shot could not reach flying aircraft, and a prohibition on shooting at or in the vicinity of an aircraft flight path. Spokane Gun Club responded with a letter indicating agreement with the base's conditions. One opponent to the conditional use permit submitted a letter that declared a belief that the shooting range would violate the military airport overlay zone.

In its written report and when providing testimony, the planning department concluded that the Spokane Gun Club's proposal to include forty-five recreational vehicle parking spaces did not render the use a "recreational vehicle park/campground" under the zoning code. The department recommended limiting the use of recreational vehicles to those dates when the gun range would host multi-day competitions.

This appeal entails a lengthy procedural history. Under the Spokane County Zoning Code, an application for a conditional use permit requires approval from a hearing examiner. On February 5, 2020, a Spokane County hearing examiner conducted a hearing on the Spokane Gun Club's application. The Medical Lake Cemetery Association, cemetery burial plot owners, family members of plot owners, and nearby homeowners opposed the conditional use permit. Opposing testimony also requested that days of operation be limited.

During the hearing examiner hearing, a representative from the Spokane County Planning Department testified regarding the site's location within the Fairchild Air Force Base Overlay Zone:

I'd like to note that the subject property is within a military area of 3/4 for the Fairchild Air Force Base and within the Fairchild Air Force Base Overlay Zone. And so based on that, Section 14.702A.430 which identifies compatible uses and densities and prohibits non-residential uses that encourage substantial concentrations of people exceeding 180 persons per acre, the proposed use will not exceed that density limitation based on the large acreage size. The section goes on to state that *participant sports and recreation and public assembly will not be permitted.*

And the reason I pointed out the definition for a gun and archery range is that I wanted to point out the fact that the Zoning Code specifically defines participant sports as one definition and then defines gun and archery ranges as separate uses. And Table 618-1 of the Rural Zones Matrix lists the gun and archery range and a recreational commercial area as separate uses as well.

So, it has been determined by the Department of Building and Planning that the gun and archery range is separate from a participant sports and recreation use which is not permitted under an MIA 3/4. Additionally, the use will not be open to the general public. And as I mentioned, those application materials were circulated to Fairchild Air Force Base for review and those comments were received which limits lighting, use of rifle, shooting direction, type of ammunition among other items.

Clerk's Papers (CP) at 757-58 (emphasis added).

During the hearing examiner hearing, a representative of the Spokane Gun Club

testified:

. . . I would like to speak to the RV parking and it's [sic] function both in the recreational use and the competitive use of this facility.

First, this is primarily a recreational facility. The competitive events that we bring are interesting and they're part of our business plan, part of our business model to make this viable. But, this is about community shooting, club shooting, and this is how we operate our facility now and what we intend to do for the future. Hopefully, for a bigger population.

Many of our guests arrive in RV's. There is, you know, I don't drive an RV out there, but the fella that drives from Missoula, they'd travel a circuit and go to these venues and many of them show up in RV's, and they

might visit us for a day or two and move on.  If they come out for an event, they'll be there for a couple of days.

CP at 782-83.  The same witness testified that the club intends for all age groups to visit the shooting range.

The hearing examiner issued a final decision on July 27, 2020.  The decision granted the conditional use permit for the operation of the Spokane Gun Club shooting range.  In his written decision, the hearing examiner wrote:

> . . . negotiations have taken place between the gun club and Fairchild Airforce Base to arrive at specific conditions upon operation of the gun range so as to avoid danger or conflicts with the Airforce Base.

CP at 120.  The hearing examiner found:

> Suggested requirements received from Fairchild Airforce Base include no rifle use except for shotguns for trap and skeet shooting, any pistol use will be fully baffled and contained, shooting direction shall be north, only standard shotgun shells shall be permitted, and any lighting of the property will be "dark sky" compliant.

CP at 122.  The examiner further found:

> The conditions of approval provided by the Airforce Base are acceptable by [Spokane Gun Club] and will be observed.

CP at 123.  The hearing examiner did not explicitly rule that the proposed use of the land conformed to the Fairchild Air Force Base military overlay zone as written in the Spokane County zoning code.  The record does not show that the hearing examiner analyzed whether the shooting of firearms constituted "participant sports and recreation" within the meaning of the zoning code's bar of such activity adjacent to a military base.

The hearing examiner addressed the Medical Lake Cemetery Association's

contention that the Spokane Gun Club's plans violated the zoning code because the plans

included a recreational vehicle park. The examiner declined to classify the proposed use

as a recreational vehicle park because the gun club does not intend to provide utilities for

the vehicles. The hearing examiner emphasized the zoning code's definition of a

recreational vehicle park as "[a]n area where *facilities* are provided" for camping units or

recreational vehicles. SCZC 14.300.100 (emphasis added). The Zoning Code does not

define the term "facilities." Thus, the hearing examiner concluded:

> In the absence of evidence from any party regarding the definition of the term "facilities" as used in the definition of Recreational Vehicle Park/Campground, the Hearing Examiner takes notice that that the term when used in reference to RVs and RV parks, is typically used to refer to the ability to "hook up" the RV to a water source, to a source of electricity, and/or a place for the disposal of greywater (sewer products) from the RV at the site or in the RV park complex.
> Under that definition of "facilities" the parking spaces sized to accommodate RVs proposed at the proposed gun range do not rise to a Recreational Vehicle Park/Campground. The availability of prepared food within the clubhouse or restrooms on the site do not fall within the typical usage of the term "facilities" as is taken notice of.

CP at 135. The hearing examiner permitted recreational vehicles at the site during

shooting competitions but required a quiet time between 9:00 p.m. and 7:00 a.m.

The Medical Lake Cemetery Association and eighteen owners of burial plots

inside the cemetery (collectively the cemetery association) filed a LUPA action in

Lincoln County Superior Court requesting reversal of the hearing examiner and denial of

the conditional use permit. The cemetery association argued that the gun range created a nuisance, constituted a taking of property, and violated their plot owners' right to exercise religion. The association alleged that the hearing examiner committed legal error when ruling that the proposed use constituted a "gun range" with the meaning of the Spokane County Zoning Code and entailed "target practice" under the code, while denying that the proposed uses involved competitive competitions at a commercial sport-shooting complex in conflict with a rural traditional zone. The cemetery association also alleged that the hearing examiner committed legal error when failing to recognize that overnight recreational vehicle parking turned the use into a recreational vehicle park in violation of the zoning code. Some of the plot owners contended they lacked notice of the application for the conditional use permit such that Spokane County and the gun club violated due process. The cemetery association asserted that the hearing examiner acted with bias and with undue influence from one of the Spokane County commissioners. The cemetery did not contend, in the Lincoln County Superior Court LUPA action, that the proposed use violated the Fairchild Air Force Base Overlay Zone.

The Lincoln County Superior Court denied the cemetery association's request for rejection of the conditional use permit. Nevertheless, in a February 2021 memorandum decision, the court remanded to the hearing examiner to impose additional noise mitigation on the gun range and wrote:

> This court finds that based upon the evidence provided to date, the Hearing Examiner's decision to grant the SGC's [Spokane Gun Club's] CUP [conditional use permit] and allow it the right to shoot five days per week up to ten hours per day for seven months per year without any mitigating conditions other than moving the proposed site 300 feet east was not supported by substantial evidence and is not compatible with the petitioners' uses of their respective properties. Also, the SGC's previous use in a residential area of Spokane Valley was generally up to three days per week, usually on Wednesdays and Saturdays and at times Sundays and other times during a multi-day event. In spite of the claimed reduction in total participation during a competitive shoot, the proposed allowance far exceeds what [it] had previously been allowed on a weekly basis.
>
> Therefore, this court is remanding this back to the Hearing Examiner to address this court's concerns and the efficacy of the possible mitigating conditions listed above and whether such conditions or others should be imposed.

CP at 280. The Lincoln County court concluded that occasional dry camping does not fall within the definition of a "Recreational Vehicle Park/Campground" under SCZC 14.300.100.

The Lincoln County Superior Court did not resolve whether or not the proposed shooting range conflicted with the Spokane County Zoning Code's prohibitions inside a military airport overlay zone. No one appealed the Lincoln County Superior Court's ruling to this Court of Appeals.

The Spokane County hearing examiner, on April 22, 2021, issued "supplemental findings of fact, conclusions of law and decision on remand." CP at 315-43. In response to the superior court's remand order, the examiner imposed additional conditions on the approval of the conditional use permit:

15

6. The days and hours of operation of the gun range for shooting shall be limited to Wednesday, Friday, Saturday, and Sunday between 10:00 a.m. and dusk or 7:00 p.m. whichever is earlier. . . .

. . . .

10. Up to five (5) multi day regional shooting tournaments hosted by the SGC will be allowed at the gun range. Those tournaments shall occur no more than one tournament during each of the following months: April, May, June, August, and September.

CP at 333-35. These conditions prohibit the Spokane Gun Club from operating on Thursdays and from hosting a regional shooting tournament during the month of July. The hearing examiner also required that the gun club erect an acoustic berm, that the range be closed on certain holidays, that the gun range cease firing during funerals or memorial services, and that shooting cease for thirty minutes during visits by individuals or groups at the cemetery. As before, the hearing examiner never deliberately addressed whether a shooting range constituted a participant sport and was prohibited within the military airport overlay zone within the meaning of the Spokane County Zoning Code.

PROCEDURE

This appeal arises from a second land use petition case, filed this time in Pend Oreille County Superior Court by the Medical Lake Cemetery Association, challenging the hearing examiner's remand decision. This second petition repeated similar allegations as asserted in the Lincoln County Superior Court petition and utilized much of the same language. The Pend Oreille County petition added that the hearing examiner engaged in improper communications with Spokane County employees and thereby

16

violated Washington's Open Public Meetings Act, chapter 42.30 RCW. The second petition also contended that the hearing examiner failed to enter sufficient mitigation requirements.

In the Pend Oreille County Superior Court LUPA petition, the cemetery association repeated its allegation that the Spokane Gun Club's proposed use went beyond the definition of a gun range and instead entailed competitions in violation of the Spokane County Zoning Code. The association also repeated its allegation that the proposed use constituted a recreational vehicle campground in violation of the zoning code. In its petition, the cemetery association never expressly suggested that the proposed use violated the Fairchild Air Force Base Overlay Zone.

During the Pend Oreille County Superior Court proceeding, the superior court never asked the parties to brief or address the question of whether the Spokane Gun Club shooting range violated the Spokane County Zoning Code prohibitions attended to the military airport overlay zone. In a forty-two-page memorandum decision, the court reversed the grant of the conditional use permit. The superior court concluded that the gun range was not a permitted use in the military airport overlay zone.

The Spokane Gun Club appealed the Pend Oreille County Superior Court's decision to this court. The Medical Lake Cemetery Association did not cross appeal.

17

LAW AND ANALYSIS

Before this court, the parties assert a number of contentions and cross-contentions regarding the opposing party's failure to assert arguments at various stages of the litigation, including this stage before this appellate court. These arguments of waiver require a score card to follow and to distinguish them from related arguments. We must address most of these contentions before addressing the merits of the dispute.

Before this court, the Spokane Gun Club assigns three errors to the hearing examiner's decision on remand from the Lincoln County Superior Court. First, the hearing examiner should have provided notice and an opportunity to be heard before prohibiting tournaments in July and before proscribing shooting range operations. Second, the hearing examiner substantively erred when it restricted the gun club from shooting tournaments during the month of July. Third, the hearing examiner mistakenly precluded shooting range operations on Thursdays.

In its opening brief to this court, the Spokane Gun Club does not assign error to the Pend Oreille County Superior Court's ruling. Nevertheless, the club contends that the Pend Oreille County court lacked authority to invalidate the conditional use permit because the Medical Lake Cemetery Association never appealed the Lincoln County Superior Court's ruling that affirmed, with modifications, the issuance of the use permit. In turn, according to the gun club, the Pend Oreille County Superior Court should have limited its review to the issues attended to the cemetery association's LUPA action.

Those issues included whether the hearing examiner committed error when, on remand from the Lincoln County Superior Court, the examiner imposed the limitations in July and on Thursday. In its opening brief, the gun club also asserts that the Lincoln County Superior Court's affirmation of the conditional use permit became the law of the case.

In its responsive brief, the Medical Lake Cemetery Association assigns no errors to the hearing examiner's decision. The cemetery association only vaguely seeks to affirm the Pend Oreille County Superior Court's ruling voiding the conditional use permit based on the military airport overlay zone. Instead, the cemetery association substantively argues that a gun range is incompatible with the Spokane County Comprehensive Plan and Spokane County Zoning Code's descriptions of rural traditional zones and a historic and cultural resource center. The association also argues that the planned development includes an impermissible recreational vehicle park. Finally, the cemetery association argues that the grant of the conditional use permit constitutes a regulatory taking under the United States Constitution's Fifth Amendment.

Procedurally, the cemetery association contends that the Spokane Gun Club and Spokane County failed to give proper notice to all individuals, holding property rights in the cemetery, of the gun club's request for a conditional use permit. The cemetery association also asserts that Spokane County colluded with the Spokane Gun Club to effectuate the hearing examiner's unlawful approval of the conditional use permit because of the county's obsession with increasing economic activity.

The Spokane Gun Club seeks to bar the Medical Lake Cemetery Association from advocating for invalidation of the conditional use permit on the ground that the cemetery association never cross appealed the Pend Oreille County Superior Court's decision. As a result, we asked both parties to address the ramifications of the cemetery association's failure to cross appeal and whether that failure requires us to affirm the issuance of the conditional use permit.

In its opening brief, the Spokane Gun Club ignores the ruling of the Pend Oreille County Superior Court, which ruling invalidated the conditional use permit in its entirety. The gun club correctly notes that, with the appeal to this court, we review the hearing examiner's decision, not the superior court's ruling. Under LUPA, we review the decision of the local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals. *Lakeside Industries v. Thurston County*, 119 Wn. App. 886, 894, 83 P.3d 433 (2004). We stand in the same position as the superior court. *Fischer Studio Building Condominium Owners Association v. City of Seattle*, 25 Wn. App. 2d 593, 599, 524 P.3d 708 (2023). Therefore, the gun club assigns no error to the superior court's decision. In turn, the cemetery association seeks to preclude the gun club from seeking to overturn the Pend Oreille County Superior Court's ruling because of the club's failure to assign error to the superior court's decision.

Because of the rule that we review the hearing examiner's decision, because of Spokane Gun Club's avoidance of the Pend Oreille County Superior Court's ruling, and because of the Medical Lake Cemetery Association's failure to sufficiently discuss the military airport overlay zone in its opening brief, we directed the parties to brief some more questions. First, did the superior court possess authority to base its decision on the military overlay zone when the Medical Lake Cemetery Association never asserted this provision of the Spokane County Zoning Code? Second, did the superior court properly base its decision on the overlay zone when it gave the parties no notice that it might base its decision on this ground? Third, assuming the superior court lacked the authority to base its decision on the overlay zone, may this Court of Appeals address the applicability of the overlay zone after giving the parties an opportunity to brief the merits of the zone's application? Fourth, does the siting of the gun club conflict with the language of the military installation overlay section of the zoning code?

On August 31, 2023, the Washington Supreme Court issued a decision in *Dalton M, LLC v. North Cascade Trust Services, Inc.*, 2 Wn.3d 36, 534 P.3d 339 (2023). The decision addresses the circumstances under which an appellate court may raise issues on its own pursuant to RAP 12.1(b). We once again asked the parties to answer a question. We posed the question of whether the Supreme Court's decision *Dalton M, LLC v. North Cascade Trust Services* precluded this court from resolving the case on the applicability of the Fairchild Air Force Base military airport overlay zone.

21

We enter a labyrinth of procedural questions. We rule that the cemetery association may seek to affirm the superior court's invalidation of the conditional use permit despite having failed to cross appeal. We hold that the Lincoln County Superior Court's ruling did not become the law of the case and the Medical Lake Cemetery Association could continue to challenge the validity of the conditional use permit during the land use petition proceeding before the Pend Oreille County Superior Court. We further hold that the Pend Oreille County Superior Court should not have denied the conditional use permit on a ground not asserted by the cemetery association without first giving the parties an opportunity to address the applicability. We, in turn, decline to address the gun range's incompatibility with the military airport overlay zone. Finally, we hold that the gun club's proposed recreational vehicle parking area constitutes a recreational vehicle park in violation of the Spokane County Zoning Code.

*Issue 1: May the Medical Lake Cemetery Association gain affirmative relief from this court in the form of invalidation of the conditional use permit when the cemetery association never cross appealed from the Pend Oreille County Superior Court?*

*Answer 1: We do not answer this question because we do not characterize the cemetery association's request as affirmative relief.*

In this court, the Medical Lake Cemetery Association seeks to invalidate the Spokane Gun Club's conditional use permit on numerous grounds. In response, the gun club contends the cemetery association may not seek this disposition because the

22

association did not cross appeal the Pend Oreille County Superior Court's decision. The gun club asserts that this court must limit its review to the club's appeal that challenges the conditions of the conditional use permit. In so responding, the gun club characterizes the cemetery association's position as seeking affirmative relief.

RAP 2.4(a) reads in part:

> The appellate court will grant a respondent affirmative relief *by modifying the decision which is the subject matter of the review* only (1) if the respondent also seeks review of the decision by the timely filing of a notice of appeal or a notice of discretionary review, or (2) if demanded by the necessities of the case.

(Emphasis added.) The Spokane Gun Club emphasizes that the hearing examiner's decision, not the Pend Oreille County Superior Court's decision, is the decision on review.

None of the decisions applying RAP 2.4(a) entail the Court of Appeals considering a superior court's ruling that reviewed an administrative agency or hearing officer. Since this court, under established precedent, reviews the Spokane County hearing examiner's decision, we face the quandary of whether we should permit the Medical Lake Cemetery Association to argue against the validity of the conditional use permit when it never appealed the superior court decision.

We observe that a party appeals from a final judgment. RAP 2.2(a)(1). A final judgment is a court's last action settling the rights of the parties and disposing of the issues in controversy. *State v. Taylor*, 150 Wn.2d 599, 602, 80 P.3d 605 (2003). The

23

final judgment in this case was the decision of the Pend Oreille County Superior Court.

The cemetery association had no incentive to appeal from the superior court's decision,

which decision granted the relief it sought. The cemetery association therefore does not

seek affirmative relief, because it does not seek a change from the final trial decision. A

party seeks affirmative relief when it wishes for the Court of Appeals to change the final

result at trial. *State v. Sims*, 171 Wn.2d 436, 442, 256 P.3d 285 (2011).

Despite our review of the hearing examiner's decision, the proceeding came to us

from the Pend Oreille County Superior Court. The Spokane Gun Club appealed, to this

court, the superior court's judgment in favor of the cemetery association, not the hearing

examiner's ruling. A cross appeal generally seeks review of a ruling, from which the

appellant does not seek relief, entered by the superior court. Although it also seeks relief

from some of the conditions of the hearing examiner's ruling, the gun club effectively

seeks relief from the superior court's ruling. The cemetery association only seeks to

affirm that same ruling of the superior court. A party filing a cross appeal to a decision

wholly in its favor makes no sense. Our adopting of the gun club's position would be

tantamount to pretending that the superior court never issued a decision.

*Issue 2: Does the Medical Lake Cemetery Association's failure to appeal the*

*Lincoln County Superior Court's February 2021 ruling preclude the cemetery*

*association from seeking the invalidity of the conditional use permit approved by the*

*hearing examiner?*

24

*Answer 2: No.*

The Medical Lake Cemetery Association challenged the hearing examiner's issuance of the Spokane Gun Club's conditional use permit in the cemetery association's first land use act petition case before the Lincoln County Superior Court. The superior court affirmed the issuance of the permit, but remanded for the hearing examiner to impose conditions that would reduce noise and restrict interferences with families visiting the cemetery. When affirming the issuance of the permit, the superior court ruled, among other rulings, that the gun club's proposed parking area for recreational vehicles did not constitute an illegal recreational vehicle park under the Spokane County Zoning Code.

In this appeal to the Court of Appeals, the gun club contends that the decision affirming the issuance of the conditional use permit became final because the cemetery association did not appeal the Lincoln County Superior Court's approval of the permit. The gun club asks this court to reverse the Pend Oreille County Superior Court on the basis that the law of the case doctrine precluded further challenge to the permit as opposed to conditions imposed on the permit. Under the gun club's view of the law of the case, this court should not entertain any argument by the cemetery association that the club's proposed use violates zoning restrictions in a military airport overlay zone or restrictions against a recreational vehicle park. The dissent adopts the Spokane Gun Club's view. Under the gun club's logic, this court's review is narrowly limited to the

specific decisions made by the hearing examiner on remand. The gun club's argument

suffers flaws.

The Spokane Gun Club's contention assumes that the cemetery association held

the right to appeal the Lincoln County Superior Court ruling. We question this

assumption. Because the Lincoln County court remanded for further proceedings before

the Spokane County hearing examiner, the association may have lacked a right to appeal.

RAP 2.2 declares:

> **(a) Generally**. Unless otherwise prohibited by statute or court rule
> and except as provided in sections (b) and (c), a party may appeal from only
> the following superior court decisions:
> (1) *Final Judgment*. The *final judgment* entered in any action or
> proceeding, regardless of whether the judgment reserves for future
> determination an award of attorney fees or costs.

(Second emphasis added.)

The dissenting opinion also contends that the Lincoln County Superior Court's

ruling constituted a final judgment such that the cemetery association could have then

appealed to this court. Nevertheless, a final judgment, for purposes of RAP 2.2(a)(1), is a

judgment that ends the litigation, leaving nothing for the court to do but execute the

judgment. *In re Detention of Petersen*, 138 Wn.2d 70, 88, 980 P.2d 1204 (1999). Stated

differently, a "final judgment" settles all the issues in a case. *In re Detention of Turay*,

139 Wn.2d 379, 392, 986 P.2d 790 (1999). The Lincoln County court did not end the

litigation between the cemetery association and the Spokane Gun Club. The court

26

remanded the case for further consideration of pending issues. A century ago, a Florida court ruled that a reviewing court's reversal of a judgment and remand of the cause for further proceedings in the lower court did not constitute a final judgment. *First National Bank v. Gibbs*, 78 Fla. 118, 82 So. 618, 620 (1919).

In *Fox v. Sunmaster Products, Inc.*, 115 Wn.2d 498, 798 P.2d 808 (1990), the Washington Supreme Court ruled that a petition for discretionary review by the plaintiff was timely as to one of two defendants granted summary judgment dismissal of plaintiff's claim. The summary judgment order had been entered more than thirty days before the filing of the petition. The superior court had even signed a certification for immediate appeal of the summary judgment order. Under CR 54(b) and RAP 5.2(a), the plaintiff could wait until final judgment was entered with respect to claims against the other defendant and then appeal as to both defendants.

The dissenting opinion suggests that, when reviewing finality for purposes of an appeal, the law identifies discrete issues entertained by the superior court, not whether the superior court resolved the entire case. The dissent cites no authority for this proposition. Under the dissenter's view, if the superior court dismisses a plaintiff's cause of action for negligent infliction of emotional distress on summary judgment, but denies the defendant's motion for summary judgment on an intentional infliction of emotional distress, the plaintiff must immediately appeal the dismissal of the former cause of action and cannot appeal the dismissal after the superior court later resolves all causes of action.

Nevertheless, under RAP 2.2(d), a party may not appeal until all claims and counts are final unless the superior court enters an order declaring there is no just reason for delay.

In *Shaw v. Clallam County*, 176 Wn. App. 925, 309 P.3d 1216 (2013), this court ruled the superior court's remand of a LUPA petition to the county administrator of community development did not constitute a final order for purposes of an appeal. In *Prosser Hill Coalition v. County of Spokane*, 176 Wn. App. 280, 286, 309 P.3d 1202 (2013), this court reviewed a superior court's remand in a LUPA case to a hearing examiner before the hearing examiner reviewed the case again. Nevertheless, the court did not address the appealability of the order of remand. Neither party argued that the superior court decision was not final.

The dissent underscores that the Lincoln County Superior Court did not remand the entire dispute to the hearing examiner. The Lincoln County Superior Court only directed the hearing examiner to address mitigating measures. We do not dispute this portrayal of the superior court's decision, but such characterization holds no bearing on whether the superior court's decision could be appealed to this court.

Next the dissent highlights that the Lincoln County Superior Court lost jurisdiction of the case when remanding the matter to the Spokane County hearing examiner. The dissent impliedly concludes that loss of jurisdiction by the superior court necessarily means that the superior court decision became final for purposes of an appeal as a matter of right. The dissent cites no authority for this conclusion.

28

Along these lines, the dissent suggests that, if the Lincoln County Superior Court's decision lacked finality, the Medical Lake Cemetery Association needed to return its LUPA petition to the Lincoln County Superior Court, not the Pend Oreille County Superior Court, after the hearing examiner entered its decision on remand. The dissent cites no authority for this conclusion, although we might agree with the dissent's logic. But the Spokane Gun Club has not argued that the cemetery association needed to return to the Lincoln County court.

Because the Lincoln County Superior Court's February 2021 decision was not a final decision, the cemetery association could have sought only discretionary review by this court under RAP 2.3. The association had no right to appeal to this court. Appellate courts disfavor piecemeal appeals. *Doerflinger v. New York Life Insurance Co.*, 88 Wn.2d 878, 882, 567 P.2d 230 (1977). Regardless of the finality of the Lincoln County Superior Court ruling before completion of remand, the cemetery association would suffer unfairness if it is precluded from advancing arguments implicating the Lincoln County ruling.

Fortunately, the RAPs contemplate the instant circumstances. This court may review the Lincoln County decision under RAP 2.4(b) because the Lincoln County ruling prejudicially affected the hearing examiner's decisions on remand from that ruling.

> **Order or Ruling Not Designated in Notice**. The appellate court
> will review a trial court order or ruling not designated in the notice,
> including an appealable order, if (1) the order or ruling prejudicially affects

29

the decision designated in the notice, and (2) the order is entered, or the ruling is made, before the appellate court accepts review.

The Spokane Gun Club's emphasis on the cemetery association's failure to appeal the Lincoln County Superior Court's ruling implicates the law of the case doctrine. Nevertheless, the gun club, as does the dissenting author, misconstrues the "law of the case" doctrine's applicability to the Court of Appeals.

The law of the case doctrine ordinarily precludes reconsideration of an identical legal issue when an appellate court has already determined the issue in an earlier appeal from the same case. *Folsom v. County of Spokane*, 111 Wn.2d 256, 263-64, 759 P.2d 1196 (1988). We might agree with the dissenting opinion's insistence that the Pend Oreille County Superior Court was bound, under the law of the case doctrine, to uphold rulings previously issued by the Lincoln County Superior Court in that both superior courts sat as appellate judges. A superior court hearing a LUPA petition acts in an appellate capacity with the jurisdiction conferred by law. *Conom v. Snohomish County*, 155 Wn.2d 154, 157, 118 P.3d 344 (2005); *Prosser Hill Coalition v. County of Spokane*, 176 Wn. App. 280, 286 (2013). But the the law of the case doctrine generally applies only to the assertion of identical issues on successive appeals of the same case. *Greene v. Rothschild*, 68 Wn.2d 1, 10, 414 P.2d 1013 (1965); *Pierce County v. Desart*, 9 Wn. App. 760, 761, n.1, 515 P.2d 550 (1973).

Even if the Pend Oreille County Superior Court should have refrained from entertaining the question of the compatibility with the military airport overlay zone or the issue of whether the gun club's proposed use contemplated a recreational vehicle park, the law of the case doctrine does not constrain this court when this court has never issued a prior decision in the instant case. This court is not bound by trial court decisions, even those made by superior courts in their appellate capacities under LUPA. This court owes no deference to a superior court in a LUPA case. *Fischer Studio Building v. City of Seattle*, 25 Wn. App. 2d 593, 599 (2023). The law of the case principle applies the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal. *Lodis v. Corbis Holdings, Inc.*, 192 Wn. App. 30, 56, 366 P.3d 1246 (2015). The rule does not preclude a higher court from considering rulings of a lower court.

Finally, the law of the case doctrine is discretionary under RAP 2.5(c)(2), which permits an appellate court to redecide an earlier decision "on the basis of the appellate court's opinion of the law at the time of the later review." *State v. Schwab*, 163 Wn.2d 664, 672, 185 P.3d 1151 (2008). We have exercised this discretion before when declining to harness the doctrine. *Cronin v. Central Valley School District*, 12 Wn. App. 2d 99, 111, 456 P.3d 843 (2020).

*Issue 3: Does the Spokane Gun Club's failure to assign error to the Pend Oreille County Superior Court's ruling abrogating the conditional use permit preclude the gun club from arguing against this court adopting the Pend Oreille County court's decision?*

*Issue 3: No.*

The Medical Lake Cemetery Association grips the sword and argues that the Spokane Gun Club should be precluded from advancing arguments contrary to the Pend Oreille County Superior Court's final decision denying the conditional use permit because the gun club assigns no errors, in its brief, to the superior court decision. As we reject the gun club's technical argument about the raising of errors and issues on review and cross appeal by the cemetery association, we also reject this technical argument of the cemetery association. As noted by the gun club, we review the decision of the local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals. *Lakeside Industries v. Thurston County*, 119 Wn. App. 886, 894 (2004). The cemetery association still bears the burden to establish error under LUPA on appeal even though it prevailed before the Pend Oreille Superior Court. *Quality Rock Products, Inc. v. Thurston County*, 139 Wn. App. 125, 134, 159 P.3d 1 (2007). The gun club could reasonably conclude that it did not need to challenge the superior court's ruling at least in its opening brief.

We deem our rulings allowing both parties to forward arguments on the merits to fulfill the purposes behind the appellate procedure rules. We should liberally interpret

the rules to reach decisions on their merits. RAP 1.2(a). We may waive rules in the interests of justice. RAP 1.2(c).

*Issue 4: Did the Medical Lake Cemetery Association raise the question of the violation of the military airport overlay zone before the Pend Oreille County Superior Court?*

*Answer 4: No.*

We inch closer to a resolving the merits of this dispute. The Spokane Gun Club asks this court to refuse to address whether the club's operation would violate the Spokane County Zoning Code provision that prevents recreational activities from within the Fairchild Air Force Base military overlay zone on the basis that the Medical Lake Cemetery Association never argued this position before the superior court. The gun club's request assumes that the cemetery association never forwarded such an argument before the superior court. The cemetery association contends to the contrary.

The Medical Lake Cemetery Association's LUPA petition, before the Pend Oreille County Superior Court, assigned sixty-four errors purportedly committed by the hearing examiner. None of the assignments discussed the military airport overlay zone. Assignment 7.5 faulted the hearing examiner for "failing to fully and properly consider and apply the Spokane County Zoning Code." CP at 14. But an appellate court does not review vague and overbroad arguments. *In re Disciplinary Proceeding Against Jensen*,

33

192 Wn.2d 427, 440, 430 P.3d 262 (2018). We do not expect a superior court to do so either.

The cemetery association also maintains that LUPA requires the superior court to uncover every possible issue arising in a land use decision when that decision comes under the court's review. RCW 36.70C.130(1), a provision in LUPA, reads that the superior court "shall review the record" of a land use decision. We read the statute to instruct the court to review the factual record in light of the arguments raised by the parties, not to comb the record in order to construct legal arguments for a party.

*Issue 5: Whether the Pend Oreille County Superior Court properly based a decision on the military airport overlay zone precluding the gun club when the cemetery association never argued that the zone precluded the use and when the superior court gave no notice in advance to the gun club that the court may resolve the land use petition action on this basis?*

*Answer 5: No.*

This question we pose does not seek an answer to the merits of whether the Spokane County Zoning Code precludes the operation of a gun club within the Fairchild Air Force Base military airport overlay zone. Instead, we ask whether the Pend Oreille County Superior Court properly raised the question on its own. The Spokane Gun Club contends the superior court violated procedural rules by doing so, while the Medical Lake

34

Cemetery Association disagrees. Spokane County argues that, even if the superior court properly raised the issue, this court should decline to address it.

The superior court civil rules lack a rule analogous to RAP 12.1 that permits the Court of Appeals to consider unbriefed arguments after affording the parties an opportunity to present written argument. RAP 12.1(b). We note, however, that at least two other state courts have held that trial courts erred when grounding a decision on an argument not raised by a party when the losing party lacked the opportunity to respond to the court's reasoning. *Maddicks v. Big City Properties, LLC*, 163 A.D.3d 501, 84 N.Y.S.3d 4, 5 (2018), *aff'd*, 34 N.Y.3d 116, 137 N.E.3d 456, 114 N.Y.S.3d 1 (2019); *Borough of Latrobe v. Pohland*, 702 A.2d 1089, 1094 (Pa. Commw. Ct. 1997). As a matter of due process, a superior court should not base a decision on a theory not argued by the parties without first giving the parties an opportunity to brief the theory's application to the case.

A party should have an opportunity to rebut arguments harming its interests. *Johnson v. Austal, U.S.A., LLC*, 805 F. Supp. 2d 1299, 1310 (S.D. Ala. 2011). This principle extends to issues raised by the trial court at the conclusion of a hearing. *Lykkebak v. Lykkebak*, 323 So.3d 328, 330 n.1 (Fla. Dist. Ct. App. 2021).

*Issue 6: Whether this court may base a ruling on the purported incompatibility of the shooting range with the Fairchild Air Force Base Overlay Zone, the ground on which the Pend Oreille County Superior Court relied, when the superior court gave no notice to*

*the gun club that it might ground its opinion on such basis and the Medical Lake*

*Cemetery Association only vaguely asserts the overlay zone in its respondent's brief to*

*this court?*

*Answer 6: No.*

The assumption that the superior court should not have decided the case on the

application of the military airport overlay zone does not necessarily mean this court

cannot resolve the dispute on any incompatibility between the operation of the gun range

and the zoning code. At the same time, despite the trial court ruling on this

incompatibility, the parties, in their opening briefs, did not analyze the question of

whether the overlay zone precluded the gun club because of the club's proximity to the

zone. Nevertheless, because we can resolve this appeal on other grounds favorable to the

cemetery association, we need not and decline to rest our decision on the overlay zone.

Pursuant to RAP 12.1(b), we directed the parties to supply supplemental briefing

on the question of whether we should substantively address the applicability of the

Fairchild Air Force Base Overlay Zone. In the end we decline to address this question

based on the Supreme Court decision in *Dalton M, LLC v. North Cascade Trust Services,*

*Inc.*, 2 Wn.3d 36 (2023). Because we rule in favor of the Medical Lake Cemetery

Association on other grounds, we decline to analyze *Dalton M*'s application to our

addressing the overlay zone. We apologize to the parties for creating this additional

work. We asked for the additional briefing because of the importance of Fairchild Air

Force Base.

*Issue 7: Whether the proposed use of the property by the Spokane Gun Club*

*violates the Spokane County Zoning Code military airport overlay zone?*

*Answer 7: We decline to address this question.*

*Issue 8: Whether the proposed use of the property by the Spokane Gun Club*

*includes a recreational vehicle park prohibited under the Spokane County Zoning Code?*

*Answer 8: Yes.*

The Medical Lake Cemetery Association urges that the Spokane Gun Club's

planned development includes an impermissible RV Park. We agree.

The Spokane County Zoning Code precludes a recreational vehicle park from a

rural traditional zone. SCZC 14.618.220. Because of its criticality, we repeat the code

section defining a recreational vehicle park:

> Recreational Vehicle Park/Campground: An area where *facilities* are
> provided for *camping units* as defined herein, *utilized by the public* for
> camping for recreation on a temporary basis and not designed for long term
> occupancy. The recreational vehicle park/campground *may include*
> *recreational services, facilities,* and activities for utilization by the public
> that are typical and ordinary to the recreational vehicle park/campground
> industry.

SCZC 14.300.100 (emphasis added). Note that the definition refers to "facilities" twice.

The Spokane Gun Club operation plans include forty-five parking stalls to

accommodate recreational vehicles during shooting events or competitions. The club

37

does not intend to provide hookup services for water, electricity, and sewer. We note, however, that, according to gun club written plans, letters, and testimony, recreational vehicle owners parking at the property will enjoy security fencing, gates, alarms, and lighting. The owners will also enjoy, at least during business hours, a clubhouse that includes water, restrooms, and food service. Just as important, the recreational vehicle parkers will enjoy recreational facilities, such as the shooting and archery ranges.

The zoning code does not define the term "facilities." Instead SCZC 14.300.000(2) demands that this court construe undefined terms "as defined in *Webster's New Collegiate Dictionary.*" Neither party provides a dictionary definition for this court.

We assume *Webster's New World College Dictionary* equates to *Webster's New Collegiate Dictionary*. We can find no *New Collegiate Dictionary*. *Webster's New World College Dictionary* lists four definitions for "facilities:"

1. Plural form of facility

2. Something that facilitates, or makes possible an action or process

3. Something created to fulfill a particular function

4. A restroom or toilet

The hearing examiner, the Spokane Gun Club, Spokane County, and the dissent conclude that "facilities," within the meaning of a "recreational vehicle park," means the capability of recreational vehicles to hookup to a broad range of utilities, such as sewer, water, and electricity. In turn, the dissent erroneously equates "utilities" with "facilities."

38

In the circumstances of ambiguity, this court often defers to the municipality's interpretation of its municipal code. *Durland v. San Juan County*, 174 Wn. App. 1, 25, 298 P.3d 757 (2012). Nevertheless, the record does not show that Spokane County based its interpretation of "facilities" on its own code's requirement that one must employ the dictionary definition. We decline to defer to the county's interpretation, when the county does not read the entirety of its code.

RCW 36.70C.130(1) authorizes this court to grant relief when:

> (b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise.

Just as Spokane County erroneously interprets SCZC 14.300.100, the hearing examiner did so by failing to read SCZC 14.300.000. The dissent compounds this error by constructing appurtenances to the definition of "facilities," such as those facilities typically available for "camping units," rather than reading the required dictionary definition.

The Spokane County Zoning Code binds us and directs us to *Webster's New World College Dictionary*, not some common understanding as to "facilities" within the context of a setting such as a recreational vehicle park. "Facilities" means something that facilitates or makes an occurrence happen. The parking area planned for the recreational vehicles by the Spokane Gun Club together with the security apparatus and amenities available at the clubhouse facilitates the use of recreational vehicles. The definition of

"recreational vehicle park/campground" under SCZC 14.300.100 also references

recreational facilities. The entire purpose behind the Spokane Gun Club site is to afford

the opportunity to engage in recreational activities.

   *Webster's New World College Dictionary* does not define "facilities" as including

any hookups or containing any specific utilities or improvements. The fourth definition

references a "toilet," and the gun club does not intend to permit recreational vehicles to

hookup to a sewage system. Still, the clubhouse, available to recreational vehicle

owners, will provide restroom facilities. The gun club does not indicate that those

restrooms will be unavailable during any particular hours of the day.

   One might argue that we should define the term "facilities" within the context of a

recreational vehicle park and conclude that a parking area must include those facilities or

utilities generally available in a recreational vehicle park, but neither SCZC 14.300.100

nor *Webster's New World College Dictionary* affords such a definition or qualification

for a park. SCZC 14.300.100 reads that the recreational vehicle "may" include

"facilities, and activities" "typical and ordinary to the recreational vehicle park . . .

industry." Use of the word "may" means those facilities are permissive and not essential

to the classification as a park. *In re Detention of Nelson*, 2 Wn. App. 2d 621, 629, 411

P.3d 412 (2018). If the Spokane County Board of Commissioners intended for a

"recreational vehicle park" to include a certain number or types of "facilities," the

commissioners could have expressed this intent with such language.

On pages 14 and 15 of the dissent, the dissenting author writes that "[t]hese additional amenities include 'recreational services, facilities, and activities for utilization by the public that are typical and ordinary to the recreational vehicle park/campground industry.'" The dissent conspicuously omits the word "may," which precedes the word "include" in SCZC 14.300.100. Spokane County Zoning Code 14.300.000 reads consistently with principles of statutory interpretation. The code section reads, in part:

> The word "shall" is always mandatory. The word "may" is permissive, subject to the judgment of the person administering the Code.

No member of the Spokane County Planning Department testified that the department considers the word "may" as used in SCZC 14.300.100 mandatory.

Remember that SCZC 14.300.100 employs the word "facilities" twice, once in each sentence. Typically, we would ascribe the same word used multiple times within a singular definition the same meaning. *Simpson Inv. Co. v. Department of Revenue*, 141 Wn.2d 139, 160, 3 P.3d 741 (2000). But we read the definition's two uses of the word "facilities" to impose two distinct meanings. "Identical words appearing more than once in the same act, and even in the same section, may be construed differently if it appears they were used in different places with different intent." *Vanscoter v. Sullivan*, 920 F.2d 1441, 1448 (9th Cir. 1990). The definition's first, mandatory use of the term "facility" requires that the "facility" provide for camping units, which camping units may include recreational vehicles. We consider parking spaces for recreational vehicles to fall within

41

this first definition. In contrast, the second, permissive use of the term "facility" relates to those utilizations typical and ordinary to the recreational vehicle park.

One may ask if the Spokane Gun Club's proposed recreational vehicle parking area includes "facilities," when would a recreational vehicle park ever not include "facilities?" We must give some meaning to all of the words inside the zoning code's definition of "recreational vehicle park/campground" such that there must be some circumstances under which a park lacks "facilities." One such circumstance would be when a park lacks any security fencing or lighting and when recreational vehicle owners lack access to food, water, and recreation facilities. Under such a circumstance, the lot owner only affords a parking spot. We need not speculate under what other circumstances the park would lack "facilities."

The Spokane Gun Club additionally argues that the recreational vehicle park would not be open to the public. The definition of a "recreational vehicle park/campground" includes opening the park to the public. SCZC 14.300.100. The gun club's argument conflicts with its stated intent as shown by the record. We agree that the gun club may limit use of the parking area to those attending events at the shooting range. Nevertheless, the events are open to the public. The gun club seeks to encourage the public at large to use its facilities.

The dissent suggests that the majority opinion transforms a rest stop into a recreational vehicle park. Even if this intimation was accurate, we are bound by the

language of the Spokane County Zoning Code. But the dissent is wrong. Recreational vehicle owners do not park recreational vehicles overnight in rest stops. Overnight parking of an eighteen-wheeler does not transubstantiate a rest stop into a recreational vehicle campground because a large truck does not constitute a "camping unit" within the meaning of the Spokane County Zoning Code. SCZC 14.300.100.

The dissent accuses the majority of creating new findings of fact. Yet, the only task we perform is construing the word "facilities" as used in the Spokane County Zoning Code. Construing ordinance terms forms a question of law we review de novo. *Department of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). In turn, we rule that the hearing examiner committed legal error.

We could affirm the hearing examiner's grant of the conditional use permit while requiring that the Spokane Gun Club remove its recreational vehicle parking area. Nevertheless, the gun club does not ask for this remedy in the event we rule that the proposed use constitutes a recreational vehicle park in violation of the code. We do not know if the gun club wishes to operate the shooting range without the ability to house recreational vehicles. Our ruling does not prohibit the Spokane Gun Club from applying again for a conditional use permit with modifications to its operating plan.

*Issue 9: Whether the proposed use of the property by the Spokane Gun Club is incompatible with the Spokane County Comprehensive Plan and Spokane County Zoning*

*Code's descriptions of rural traditional zones and incompatible to a neighboring historic and cultural resource center?*

*Answer 9: We need not and decline to address this question since we rule in favor of the Medical Lake Cemetery Association on other grounds.*

*Issue 10: Whether the grant of the conditional use permit constitutes a regulatory taking under the United States Constitution?*

*Answer 10: We need not and decline to address this question since we rule in favor of the Medical Lake Cemetery Association on other grounds.*

*Issue 11: Whether the Spokane Gun Club and Spokane County denied some burial plot owners due process by a failure to give notice?*

*Answer 11: We need not and decline to address this question since we rule in favor of the Medical Lake Cemetery Association on other grounds.*

*Issue 12: Whether the Spokane Gun Club and Spokane County improperly colluded in order to gain the issuance of the conditional use permit?*

*Answer 12: We need not and decline to address this question since we rule in favor of the Medical Lake Cemetery Association on other grounds.*

## CONCLUSION

We affirm, on different grounds, the superior court's reversal of the hearing examiner's issuance of the conditional use permit for the Spokane Gun Club. The

No. 38850-6-III,
*Medical Lake Cemetery Ass'n v. Spokane County*

Spokane Gun Club's plans include an "recreational vehicle park/camping," which park

violates the rural traditional zone in which the property lies.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Fearing, C.J.

I CONCUR:

_____
Lawrence-Berrey, J.

No. 38850-6-III

STAAB, J. (dissenting) — I respectfully dissent from my colleagues on two issues: whether "the law of the case doctrine" should prevent consideration of issues that were decided by the Lincoln County Superior Court in the Medical Lake Cemetery Association's (Cemetery) first appeal, and whether the Spokane Gun Club's proposed development qualifies as a recreational vehicle (RV) park/campground. I would conclude that the law of the case doctrine should preclude our review of the RV park issue and regardless, the hearing examiner did not error.

1. LAW OF THE CASE

Unlike the majority decision, I would hold that the law of the case doctrine applies to this case on multiple levels. First, the doctrine should preclude the Pend Oreille County Superior Court from reconsidering issues that were decided by the Lincoln County Superior Court; both of whom decided the issues in their appellate capacity. Additionally, the same doctrine should preclude our review of the issues decided by the Lincoln County Superior Court because the Cemetery failed to appeal the Lincoln County Court's opinion to the court of appeals.

A. *Background*

Some additional procedural background is relevant to this issue. In its first LUPA[1] petition to the Lincoln County Superior Court, the Cemetery raised 38 issues, challenging the validity of the hearing examiner's decision to approve the conditional use permit. The Lincoln County Superior Court consolidated the alleged errors into eight issues.

On the substantive issues, the court generally ruled in favor of the Spokane Gun Club. Specifically, the court held that: (1) the hearing examiner was not biased requiring removal, (2) the proposed use is not prohibited under the comprehensive plan and zoning code, (3) the proposed use qualifies as a gun range, (4) allowing recreational vehicles to park in the parking lot overnight does not create an illegal RV park, (5) the county and the Spokane Gun Club provided adequate notice of the hearing to interested parties, and (6) the proposed conditional use permit can be compatible with the cemetery and neighboring property owners.

While concluding that the shooting range could be compatible with the neighboring property owners, the Lincoln County Superior Court concluded that the conditional use permit granted by the hearing examiner in this case lacked adequate mitigating conditions to make it compatible with the neighboring property owners. Based on this conclusion, the court reversed the grant of a conditional use permit and

---

[1] Land Use Petition Act, ch. 36.70C RCW.

remanded the LUPA back to the hearing examiner for the limited purpose of addressing "this court's concerns and the efficacy of the possible mitigating conditions listed above and whether such conditions or others should be imposed." Clerk's Papers (CP) at 280.

On remand, the hearing examiner denied the Cemetery's motion to reopen the record and reconsider issues decided by the Lincoln County Superior Court. The hearing examiner cited several reasons, including the doctrine of law of the case and the mandate rule. The hearing examiner noted that the court had reviewed its decision in its appellate capacity and concluded that once there had been an appellate holding on an issue of law, that holding would be followed in subsequent stages of the same litigation. The hearing examiner concluded that the mandate of an appellate court is binding.

The hearing examiner then proceeded to consider the specific issues on remand, relying on the record as certified in the Lincoln County LUPA. The hearing examiner imposed additional mitigating conditions on the Spokane Gun Club's operation. Based on the supplemental findings and conclusions, the hearing examiner found the shooting range to be consistent with the comprehensive plan and was consistent with the rural character of the area.

In its second LUPA petition, filed in Pend Oreille County, the Cemetery identified 64 errors. While the Cemetery's petition claims that it was only appealing the hearing examiner's supplemental decision dated April 26, 2021, along with the hearing examiner's decision denying the Cemetery's motion to reopen the record, it is clear that

some of the Cemetery's 64 alleged errors included rulings made in the hearing examiner's first decision. For example, the Pend Oreille County LUPA raised issues of notice, quoting language from the hearing examiner's first decision.[2] The Pend Oreille County LUPA also challenged the hearing examiner's conclusion that the Spokane Gun Club's proposed use qualified as a "gun range," under the Spokane County Zoning Code, a conclusion reached only in the first decision.

### B. *Summary of Dissenting Opinion on Law of the Case*

On appeal to this court, the Spokane Gun Club argues that the Lincoln County Superior Court's decision created the law of the case, and this doctrine should have precluded the Pend Oreille County Superior Court from reconsidering the same issues. Additionally, the Spokane Gun Club contends that because the Cemetery failed to appeal from the Lincoln County Superior Court's decision, it is precluded from raising those issues in the second appeal. The Cemetery responds that the Lincoln County Superior Court lost jurisdiction when it issued its decision and the law of the case doctrine should not apply to a second LUPA petition challenging new issues decided on remand. The majority opinion holds that the Lincoln County Superior Court decision was not final

---

[2] The errors identified in the Cemetery's LUPA petition are vague and fail to specify which rulings are being challenged. *See* RCW 36.70C.070(7) ("A land use petition must set forth: … (7) A separate and concise statement of each error alleged to have been committed."). While the petition alleges it is only challenging rulings made on remand, it is undeniably raising issues decided by the hearing examiner in his first decision.

because it remanded on one issue and therefore did not become the law of the case.

Additionally, the majority opinion holds that even if the Lincoln County Superior Court

decision created the law of the case, this court is not bound by a lower court's decision.

I disagree. The law of the case doctrine generally precludes an appellate court at

any level from reconsidering issues that have been decided in a prior appeal. Contrary to

the majority opinion, the focus is on the issues not on whether the decision as a whole is

final. But even if we consider the status of the case rather than rulings on particular

issues, the Lincoln County Superior Court's decision was a final appellate decision. The

Lincoln County Superior Court made its decision on the merits on several issues

including whether a shooting range could be legally compatible with the zoning. When

the Cemetery failed to appeal these final rulings, the decision became the law of the case.

Absent a recognized exception, this doctrine should preclude further review by another

appellate court on a subsequent appeal, whether at the superior court level or at the court

of appeals.

In this case, application of the law of the case promotes the policies of LUPA. We

should not invite protracted litigation in contravention of the policies of LUPA and the

law of the case by permitting multiple opportunities to raise an issue that has been

decided. "To require courts to consider and reconsider cases at the will of litigants would

deprive the courts of that stability that is necessary in the administration of justice."

*Hong v. Dep't of Soc. & Health Servs.*, 146 Wn. App. 698, 710, 192 P.3d 21 (2008).

5

*C. Principles, Policies and Application of the Law of the Case in a LUPA petition*

The majority opinion holds that the Lincoln County Superior Court's decision was not the law of the case because it was not a final decision and reasons that it was not a final decision because the Lincoln County Superior Court remanded the case for further proceedings on one issue, citing RAP 2.2. This logic misconstrues the doctrine.

The law of the case doctrine applies to issues determined on appeal, not the status of the case. "In its most common form, the law of the case doctrine stands for the proposition that once there is an appellate holding enunciating a principle of law, that holding will be followed in subsequent stages of the same litigation." *Roberson v. Perez*, 156 Wn.2d 33, 41, 123 P.3d 844 (2005).

This common law doctrine is codified in RAP 2.5(c), which provides:

**Law of the Case Doctrine Restricted**. The following provisions apply if the same case is again before the appellate court following a remand:

(1) **Prior Trial Court Action**. If a trial court decision is otherwise properly before the appellate court, the appellate court may at the instance of a party review and determine the propriety of a decision of the trial court even though a similar decision was not disputed in an earlier review of the same case.

(2) **Prior Appellate Court Decision**. The appellate court may at the instance of a party review the propriety of an earlier decision of the appellate court in the same case and, where justice would best be served, decide the case on the basis of the appellate court's opinion of the law at the time of the later review.

In describing this rule, the Supreme Court has noted that "'questions determined on appeal, or which might have been determined had they been presented, will not again be considered on a subsequent appeal if there is no substantial change in the evidence at a second determination of the cause.'" *Greene v. Rothschild*, 68 Wn.2d 1, 7, 414 P.2d 1013 (1966) (footnote omitted) (quoting *Adamson v. Traylor*, 66 Wn.2d 338, 339, 402 P.2d 499 (1965)).

While the doctrine is discretionary, courts should refrain from reconsidering the identical issue in a subsequent appeal unless the prior decision was "clearly erroneous and the application of the doctrine would result in manifest injustice." *Folsom v. County of Spokane*, 111 Wn.2d 256, 264, 759 P.2d 1196 (1988).

In this case, both the Lincoln County Superior Court and the Pend Oreille County Superior Court reviewed the LUPA petitions as appellate courts. *Cave Props. v. City of Bainbridge Island*, 199 Wn. App. 651, 660, 401 P.3d 327 (2017). The Lincoln County Superior Court enunciated principles of law and decided the issues presented. The Lincoln County Superior Court's appellate decision on the merits created the law of the case.

Even if we were to consider the status of the case rather than the rulings on questions presented, the Lincoln County Superior Court's decision was a final appellate decision. Contrary to the majority's conclusion, an appellate decision by a superior court that decides some issues and remands on other issues can be a final decision on those

7

issues decided. I acknowledge, however, that the court of appeals has been inconsistent in characterizing LUPA appeals when the superior court has remanded for further proceedings. *See Prosser Hill Coal. v. County of Spokane*, 176 Wn. App. 280, 283, 309 P.3d 1202 (2013) (this court accepted direct review of a superior court LUPA decision remanding for new hearing), *but see Shaw v. Clallam County*, 176 Wn. App. 925, 930-31, 309 P.3d 1216 (2013) (court rejecting direct appeal from a superior court LUPA decision ordering remand because decision was not final and instead granted discretionary review).

Here, the issues decided by the Lincoln County Superior Court were a final decision that was not affected by the limited issue on remand. The Cemetery could have appealed the Lincoln County Superior Court's decision to this court. Absent any further review, those rulings became the law of the case and should not be reconsidered on a subsequent appeal, especially when the hearing examiner denied the Cemetery's motion to reopen the record and reconsider the issues decided by the Lincoln County Superior Court.

The Cemetery argues that the Pend Oreille County Superior Court was not bound by the Lincoln County Superior Court decision because the Lincoln County Superior Court remanded the entire case back to the hearing examiner and thus lost jurisdiction. The Cemetery contends that a second LUPA petition was necessary in order to review

any subsequent land use decision made on remand. This argument mischaracterizes the record and misconstrues the nature of appellate review.

The Lincoln County Superior Court did not remand the entire case to the hearing examiner. It is clear from the record that the Lincoln County Superior Court reversed the hearing examiner's grant of a conditional use permit and ordered a limited remand for the sole purpose of "address[ing] this court's concerns and the efficacy of the possible mitigating conditions listed above and whether such conditions or others should be imposed." CP at 280. This limited remand was not "a complete LUPA remand." Cemetery's Br. of Resp't at 13. Nor was the Cemetery's second LUPA petition limited to subsequent land use rulings made on remand. Instead the Cemetery's 64 identified issues included numerous challenges to the hearing examiner's first decision.[3]

The Cemetery's argument that the Lincoln County Superior Court lost jurisdiction on remand fails because the Lincoln County Superior Court lost jurisdiction when it issued a final decision terminating review. A final decision terminating review becomes the law of the case when it is not appealed.

---

[3] The Cemetery's LUPA petition to Pend Oreille County Superior Court only appealed the hearing examiner's supplemental findings and conclusions. Perhaps this is because jurisdiction under LUPA requires the petition to be filed within 21-days of the final decision. Yet, the hearing examiner's supplemental findings and conclusions did not address many of the issues raised in the Cemetery's Pend Oreille LUPA petition.

9

There are only two types of appellate decisions: a final decision that terminates review and an interlocutory decision. RAP 12.3. An interlocutory decision is any opinion that is not a decision terminating review. RAP 12.3(b). "In other words, an interlocutory decision is a decision during the course of appellate review that neither decides the case on the merits nor dismisses the case." 3 ELIZABETH A. TURNER, WASHINGTON PRACTICE: RULES PRACTICE RAP 12.3, author's cmts. at 168 (9th ed. 2022). On the other hand, a decision terminating review is a final decision on the merits. *Id*.

When an appellate court issues an interlocutory decision, it retains jurisdiction. *Hong*, 146 Wn. App. at 710. When an appellate court issues a decision that terminates review, it loses jurisdiction. *Id*. at 709 (citing *Pierce County Sheriff v. Civil Srv. Comm'n*, 98 Wn.2d 690, 695, 658 P.2d 648 (1983)). The same rule applies when a superior court, sitting as an appellate court, issues a decision that terminates review. "Just as an appellate court loses jurisdiction upon remand to the trial court (*Reeploeg v. Jensen*, 81 Wn.2d 541, 546, 503 P.2d 99 (1972)), a superior court reviewing action of an administrative agency loses jurisdiction upon remand to the agency." *Pierce County Sheriff*, 98 Wn.2d at 695 (citation omitted).

When a superior court sitting as an appellate court issues a final decision that remands on one or more issues, but does not retain jurisdiction, a second LUPA petition

must be filed to review any rulings made on remand. *See Id.* (error for superior court reviewing administrative decision in writ of review to allow second appeal by amendment to original writ rather than filing second motion for writ because superior court lost jurisdiction upon remand to civil service commission). On the other hand, if a superior court sitting as an appellate court issues an interlocutory decision, then it does not lose jurisdiction to review any rulings on remand. *Hong*, 146 Wn. App. at 711.

Either the Lincoln County Superior Court's decision was final and it lost jurisdiction or its decision was interlocutory and it retained jurisdiction. If the Lincoln County Superior Court decision was final, then the law of the case applies. If it was interlocutory, then the Cemetery was required to return the case to the Lincoln County Superior Court for review following remand. By arguing that the Lincoln County Superior Court lost jurisdiction, the Cemetery implicitly concedes that the Lincoln County Superior Court's decision was final and appealable.

We should also decide that the law of the case precludes our review of the Lincoln County Superior Court's decision that was not appealed to this court. "'Under the doctrine of "law of the case," as applied in this jurisdiction, the parties, the trial court, and this court are bound by the holdings of the court on a prior appeal until such time as they are "authoritatively overruled."'" *Folsom*, 111 Wn.2d at 264 (quoting *Greene*, 68 Wn.2d at 10). This principle is recognized in RAP 12.2, which provides procedures following issuance of an appellate court decision and provides in part:

> Upon issuance of the mandate of the appellate court . . . the action taken or decision made by the appellate court is effective and binding on the parties to the review and governs all subsequent proceedings in the action *in any court*, . . . except as provided in rule 2.5(c)(2).

(emphasis added).

The majority contends that even if the Pend Oreille Superior Court should have refrained from readdressing issues decided by the Lincoln County Superior Court, the law of the case does not constrain this court because we have never addressed the Lincoln County Superior Court's decision. Majority at 30. This is not a correct application of the doctrine. While the law of the case doctrine is discretionary, it applies at all levels of appellate review, and presumes that rulings in a prior appeal are final unless the court in a subsequent appeal determines that the prior decision is clearly erroneous and the interests of justice compel our review. *See First Small Business Inv. Co. of California v. Intercapital Corp. of Oregon*, 108 Wn.2d 324, 333, 738 P.2d 263 (1987).

In *First Small Business*, the court of appeals issued an opinion remanding the case and the Supreme Court declined further review. In the second appeal of the same case, the Supreme Court accepted review and the respondent argued that the Supreme Court should not review the court of appeal's decision from the first appeal. The Supreme Court recognized that RAP 2.5(c)(2) was discretionary, acknowledged that the law of the case applied to its review of an earlier decision by the court of appeals, but exercised its discretion to consider the earlier decision. *Id*. at 332-33.

12

Here, the Cemetery raised the issue of the RV park in its first LUPA appeal in Lincoln County. The Lincoln County Superior Court, sitting as an appellate court, addressed that issue. The Cemetery did not appeal that decision to this court. On remand, the hearing officer, citing the law of the case, refused to reconsider the issue. The Cemetery filed a second LUPA petition in a different county, claiming it was challenging only the hearings examiner's supplemental findings and conclusions, but resurrected the RV park issue along with several other issues decided in the first appeal. Under these circumstances, the law of the case should apply because the Cemetery fails to show that the Lincoln County Superior Court's decision was erroneous and justice demands that we exercise our discretion to disregard the law of the case.

Applying law of the case to preclude our review of issues decided in the first appeal promotes the purpose and goal of both LUPA and the doctrine. The law of the case doctrine provides finality for litigated issues. *Lodis v. Corbis Holdings, Inc.*, 192 Wn. App. 30, 55, 366 P.3d 1246 (2015). The policy considerations include:

> "(1) to protect settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end."

*Id*. (quoting *In re Estate of Jetter*, 590 N.W.2d 254, 258 (S.D. 1999).

Similarly, the express purpose of the LUPA chapter is to "establish[ ] uniform, *expedited appeal procedures* and uniform criteria for reviewing such decisions, in order

13

to provide *consistent, predictable, and timely judicial review*." RCW 36.70C.010

(emphasis added). Indeed, the "strong public policy supporting administrative finality in

land use decisions," is one reason the courts strictly enforce the 21-day deadline for filing

LUPA appeals. *Chelan County v. Nykreim*, 146 Wn.2d 904, 931, 52 P.3d 1 (2002)

(quoting *Skamania County v. Columbia River Gorge Comm'n*, 144 Wn.2d 30, 49, 26

P.3d 241 (2001)). This case is a perfect example of how the failure to apply the doctrine

of the law of the case defeats these policies and purposes.

2.  THE GUN CLUB'S PROPOSED DEVELOPMENT DOES NOT INCLUDE AN UNAUTHORIZED
    RECREATIONAL VEHICLE PARK

In its second LUPA petition, the Cemetery raises an issue that was decided in its

first LUPA petition: whether the Spokane Gun Club's proposal to include parking spaces

large enough to accommodate recreational vehicles creates an RV park that is otherwise

prohibited by the applicable "Rural Traditional" (RT) zone under Spokane County's

Zoning Code. The Spokane Gun Club's proposed development includes a parking lot

striped with parking stalls large enough to accommodate RVs. These parking stalls will

not have utility hook-ups; there will be no electrical, water, or sewer utilities provided to

the parking stalls.

The Spokane County Zoning Code (SCZC) defines a "Recreational Vehicle

Park/Campground" as "[a]n area where facilities are provided for camping units as

defined herein, utilized by the public for camping for recreation on a temporary basis and

not designed for long term occupancy." SCZC 14.300.100. Additional amenities may be provided, but are not required. *Id*. These additional amenities include "recreational services, facilities, and activities for utilization by the public that are typical and ordinary to the recreational vehicle park/campground industry." *Id*.

The hearing examiner determined that when used in reference to RVs and RV parks, the term "facilities" typically references the ability to "hook up" the RV to utilities at the site or in the RV park complex. CP at 135. In light of this contextualized meaning, the hearing examiner held that providing parking stalls without such facilities does not create a recreational vehicle park/campground. *Id*. The hearing examiner noted that the availability of food from a clubhouse or onsite restrooms did not change the outcome since such "services and facilities could be allowed in a Community Recreational Facility, which is an allowed use in the Rural Traditional zone." CP at 212. Nor was it relevant that recreational vehicles were undisputedly "camping units" and allowing them to dry camp for several days would constitute camping because "camping alone is not a prohibited activity." *Id*.

The Cemetery raises this issue in its brief to this court, but the entirety of its argument boils down to one sentence: "[Spokane Gun Club's] proposed RV accommodations, with RV stalls and indoor clubhouse kitchen/dining, restrooms and pro-shop, and with a sport-shooting complex facility for those staying in camping units, is a

prohibited RV Park in the RT Zone under the SCZC." Cemetery's Br. of Resp't at 29. The majority opinion agrees with the Cemetery.

I disagree with the majority's conclusion for several reasons. First, the Cemetery makes no attempt to meet its burden of identifying which statutory standards were violated by the hearing examiner's decision. A party seeking relief in a LUPA petition must establish that the hearing examiner erred under one of the six standards set forth in RCW 36.70C.130(1). *Lakeside Indus. v. Thurston County*, 119 Wn. App. 886, 894, 83 P.3d 433 (2004). In general terms, the Cemetery "must establish either the hearing examiner made a mistake of law, that there was insufficient evidence to support the decision, or that the decision was clearly erroneous." *City of University Place v. McGuire*, 144 Wn.2d 640, 647, 30 P.3d 453 (2001). Unchallenged findings are verities, challenged findings are reviewed for substantial evidence, and errors of law are reviewed de novo. *Seven Hills, LLC v. Chelan County*, 198 Wn.2d 371, 384, 495 P.3d 778 (2021). Our review is limited to the record available to the hearing examiner. *Id.*

The Cemetery makes no mention of the standards in RCW 36.70C.130(1) in either its LUPA petition or its appellate brief. Nor does it make any attempt to demonstrate that it has met its burden of proving one of the standards. The majority opinion makes up for the Cemetery's failure by doing the Cemetery's work for it.

In the Cemetery's LUPA petition, it asserts that the hearing examiner erred as a matter of law and/or fact in defining a "Recreational Vehicle Park/Campground," and the

16

Spokane Gun Club's proposal did not constitute an RV park. CP at 24. This generalized statement is insufficient to challenge any particularized finding of fact and the Cemetery makes no attempt to argue that the hearing examiner's findings are not supported by substantial evidence. Thus, the findings of the hearing examiner are verities on appeal and any alleged errors in determining the meaning of statutory terms is a question of law reviewed de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002).

The majority opinion's conclusion that the Spokane Gun Club's proposal creates an unauthorized RV park is based on a statutory interpretation that fails to give effect to the zoning code's plain meaning. Similar to statutory construction, our primary goal in construing a zoning code is to determine the legislative intent. *See Id*. If the meaning of a code is plain on its face, then we consider the plain meaning "as an expression of legislative intent." *Id*. at 9-10. Plain meaning is derived from considering the ordinance in context, not only by looking at the ordinance itself but also related ordinances. *Id*. at 10.

As noted above, the SCZC defines a "Recreational Vehicle Park/Campground" as "[a]n area where facilities are provided *for camping units* as defined herein, utilized by the public for camping for recreation on a temporary basis and not designed for long term occupancy." SCZC 14.300.100 (emphasis added). In other words, it is not just that facilities are provided, instead the facilities are provided specifically for camping units.

17

As the hearing examiner reasonably noted, the plain meaning of this phrase means the availability of utilities for camping units either at the site or in the park. This is simply a common-sense application of the plain meaning of the zoning code.

Nevertheless, the majority opinion reasons that a contextualized definition of "facilities" provided for camping units is not appropriate and instead defines "facilities" in isolation as something that "facilitates or makes an occurrence happen." Majority at 39. The majority opinion then goes on to make a new finding of fact based on evidence in the record that was not argued by the Cemetery or found by the hearing examiner: "The parking area planned for the recreational vehicles by the Spokane Gun Club *together with the security apparatus* and amenities available at the clubhouse *facilitates the use of recreational vehicles*." Majority at 39 (emphasis added). Security lights and fencing are not raised in the Cemetery's briefs, and were never considered by the hearing examiner as evidence of an RV park. Nor did the hearing examiner find that such features facilitated the use of RVs. Indeed, the hearing examiner found just the opposite. Finally, the majority opinion improperly shifts the burden to the Spokane Gun Club and notes that the *Spokane Gun Club* had not proved that the restrooms are not available for overnight campers. Majority at 40.

The majority's conclusion, that marking parking stalls large enough to accommodate an RV and providing onsite restrooms is sufficient to create an RV park, has the unintended consequence of turning every rest stop into an RV park. In addition,

18

the conclusion that large parking spots plus on-site restrooms creates an RV park, is easily circumvented. What if the Spokane Gun Club does not stripe parking spots large enough for RVs, but people park their RVs using more than one regular spot? As the hearing examiner noted, providing a clubhouse and restrooms is allowed in the RT zone. CP at 135. And allowing overnight parking does not create an RV park because camping is not a prohibited activity. *Id.*

The plain meaning of the zoning code defines an RV park as an area where facilities are provided specifically for camping units. This is what turns a parking lot into an RV park. The hearing examiner did not error in applying this definition and concluding that the Spokane Gun Club's proposed development did not include an unauthorized RV park.

_____
Staab, J.